UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS TRUST, et al., | ) ) ) | CV 08-5287 SVW (FFMx) |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY FEES, |
| v. | ) ) | DOUBLE INTEREST, AND COSTS [84] |
| NANCIE'S SWEEPING, INC., | ) ) | |
| Defendant. | ) ) | |

## I.    INTRODUCTION

Following a bench trial on July 8, 2009, the Court ruled that Plaintiffs had succeeded on their claim for unpaid fringe benefit contributions.  The Court ordered that Plaintiffs were entitled to $283,681.95 ($274,744.05 after deducting certain amounts as discussed during the trial), 10% in liquidated damages, and prejudgment interest as calculated per 26 U.S.C. § 6621.

In addition, the Court ordered that Plaintiffs submit a motion regarding attorneys' fees and audit costs.  That motion is now before

the Court.  Plaintiffs are seeking attorneys' fees of $199,195.43, audit costs of $5,000, and double interest.

The Court and the parties are aware of the relevant facts, which are set out in the Court's August 14, 2009 Findings of Fact and Conclusions of Law.

## II.  ANALYSIS

### A.  Prejudgment Interest on Unpaid Contributions

An award of prejudgment interest on unpaid contributions is mandated by 29 U.S.C. § 1132(g)(2)(B).  Absent a contractual provision in the Master Agreement setting the interest rates, these interests rates should be calculated under 26 U.S.C. § 6621.  Interest is compounded at a daily rate (see 26 U.S.C. § 6622(a); Notice 88-59, 1988-1 CB 549) and in accordance with the Secretary of Treasury's quarterly determination of the short-term interest rate.  26 U.S.C. § 6621(a)(2)(A).

Plaintiffs' auditor, Michael Babel, has calculated this interest to be $68,208.92.  (Declaration of Michael Babel in Support of Motion for Attorneys' Fees, Double Interest, and Costs ["Babel Decl."], ¶ 5.) Defendant does not dispute this calculation.[1]

---

[1] Defendant argues that the Court should deny the request for prejudgment interest because "[f]undamental fairness requires that pre-judgment interest not be awarded under the unique facts of this case."  (Opp. at 10.)  However, 29 U.S.C. § 1132(g)(2)(B) establishes that prejudgement interest is <u>mandatory</u> in this case, not discretionary.  Further, even if prejudgment interest were discretionary, the "unique facts of this case" (see Def.'s Opp. at 10) establish the utter falsity of Defendant's assertions that it acted in good faith.  Defendant relies on factual arguments that the Court <u>rejected</u> in its Findings of Fact and Conclusions of Law.

Accordingly, Plaintiffs are entitled to $68,208.92 in prejudgment interest on the unpaid contributions.

**B.   Liquidated Damages or Double Interest**

Per 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to "an amount equal to the greater of" either: (1) liquidated damages of up to 20% of the unpaid contributions <u>or</u> (2) an award equal to the amount of prejudgment interest as calculated under § 1132(g)(B).

In its Findings of Fact and Conclusions of Law, the Court instructed Plaintiffs to bring a motion for liquidated damages in the amount of 10% of the amount awarded at trial.  This would amount to $27,474.41.  Plaintiffs instead request that the Court provide an award equal to the prejudgment interest per § 1132(g)(2)(C)(i).

Because § 1132(g)(2)(C) is mandatory, <u>see</u> <u>Operating Engineers</u> <u>Pension Trust v. Beck Engineering & Surveying Co.</u>, 746 F.2d 557, 569 (9th Cir. 1984), the Court finds that an award of $68,208.92 is required.  Defendant's arguments about "[f]undamental fairness" are irrelevant under § 1132(g)(2)(C).

**C.   Reasonable Attorney's Fees**

Plaintiffs also request reasonable attorney's fees as required by 29 U.S.C. § 1132(g)(2)(D).  In deciding the amount of attorneys' fees to award under 29 U.S.C. § 1132(g), courts consider the lodestar approach in set forth in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).[2]  Under the lodestar calculation, a reasonable fee is the

---

[2] Defendant argues that the proper criteria for determining the amount of fees are set out in <u>Hummel v. S.E. Rykoff & Co.</u>, 634 F.2d 446, 452 (9th Cir. 1980).  However, as discussed in <u>Credit Managers Ass'n of</u> <u>Southern California v. Kennesaw Life & Acc. Ins. Co.</u>, 25 F.3d 743, 748-49 (9th Cir. 1994), the <u>Hummel</u> analysis is used to determine whether or not to award fees under the discretionary provision of 29 U.S.C. § 1132(g)(1).  In the present case, 29 U.S.C. § 1132(g)(2)

product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id.

Though the lodestar amount is strongly presumed to be reasonable, see Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992), the Court may adjust the lodestar figure in order to reach a more reasonable result on the basis of additional factors not considered in the lodestar calculation.  See Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996), amended on other grounds, 108 F.3d 981 (9th Cir. 1997).

        a.    Reasonable Rate

In determining whether a particular fee rate is reasonable, the Court must look to "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984).  The relevant community includes "attorneys practicing in the forum district" -- that is, the district in which the court sits.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  In determining the applicable market rate, "the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits[3] -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n. 11.  Once the fee applicant has satisfied its burden of producing evidence of reasonableness, the

mandates the award of fees.  In any event, under both § 1132(g)(1) and § 1132(g)(2), the determination of reasonable fees proceeds according to the lodestar method.  See Credit Managers Ass'n, 25 F.3d at 750.

[3] Though an attorney's own affidavit is insufficient, affidavits of third parties are sufficient to satisfy this burden.  See Bouman v. Black, 940 F.2d 1211, 1235 (9th Cir. 1991).  [Footnote added by Court.]

opponent of the fees bears the burden of producing evidence that the fees are unreasonable.  See Gates, 987 F.2d at 1405.

Plaintiffs seek a rate of $195 to $280 per hour for attorneys and $95 per hour for paralegals.

Plaintiffs provide an affidavit from Angelo T. Nicodemo, who is an accountant with Bernard Kotkin & Company, an accounting firm that provides accounting services to approximately sixty multi-employer, Taft-Hartley Trust Funds such as Plaintiffs.  (Declaration of Angelo Nicodemo in Support of Motion for Attorneys' Fees ["Nicodemo Decl."], ¶¶ 2-3.)  Nicodemo states that, in his experience, lawyers charge these trust funds between $125 and $350 per hour, with the majority of firms charging between $200 and $350 per hour.  (Id. at ¶ 4.)  Nicodemo states that, in his opinion, Plaintiffs' rates of $160 to $280 per hour are reasonable for attorneys, and $95 per hour is reasonable for paralegals.  (Id. at ¶ 5.)

The Nicodemo Affidavit satisfies Plaintiffs' burden of producing evidence that their hourly rates for attorneys are reasonable.  See Bouman v. Black, 940 F.2d 1211, 1235 (9th Cir. 1991).  Defendant does not challenge the reasonableness of Plaintiffs' hourly rates for attorneys.  Accordingly, the Court deems these rates to be reasonable.

Regarding the rates billed for paralegals, the Nicodemo Declaration also contains a factual basis for concluding that the $95 hourly rate is reasonable for paralegal time.  Nicodemo asserts: "I am personally familiar with the hourly rates of legal fees charged to our clients by various law firms for legal advice and representation."  (Nicodemo Decl., ¶ 4.)  Nicodemo asserts that, in his opinion, a $95 rate is reasonable.  (Id. at ¶ 5.)  The Court finds this evidence

1   sufficient to satisfy Plaintiff's threshold burden of establishing

2   reasonableness of the paralegals' billing rate.

3       Defendant challenges the paralegal rate as unreasonable because,

4   according to Defendant, "[p]urely clerical or secretarial tasks should

5   not be billed, regardless of who performs them." (Opp. at 7, citing

6   Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).)  The case cited by

7   Defendant, Jenkins, requires that courts examine "the practice in the

8   relevant market" to determine whether paralegals should be billed

9   separately from attorneys, or whether paralegal costs should be built

10  into attorneys' hourly rates.  491 U.S. at 488.  Interestingly, Jenkins

11  also counsels that paralegals may charge a full "paralegal rate" for

12  work that might otherwise be performed by a lawyer, such as, "for

13  example, factual investigation, including locating and interviewing

14  witnesses; assistance with depositions, interrogatories, and document

15  production; compilation of statistical and financial data; checking

16  legal citations; and drafting correspondence." Id. at 488 n.10.  In

17  contrast, "purely clerical or secretarial tasks should not be billed at

18  a paralegal rate, regardless of who performs them." Id. (emphasis

19  added).  "Such non-legal work may command a lesser rate." Id. (quoting

20  Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir.

21  1974)).

22      The Court is not oblivious to Defendant's apparent attempt to

23  misrepresent the state of the law.  There is no such rule that "purely

24  clerical tasks should not be billed," as Defendant repeatedly asserts.

25  (Opp. at 7-8.)  Clerical tasks may indeed be billed. See, e.g.,

26  Trustees of the Construction Industry v. Redland Ins. Co., 460 F.3d

27  1253, 1259 (9th Cir. 2006).  Even the cases cited by Defendant do not

28

1    support Defendant's assertion.  See Jenkins, 491 U.S. at 288; In re

2    Maruko, Inc., 160 B.R. 633 (S.D. Cal. 1993); Decibus v. Woodbridge

3    Township Dept., 1991 U.S. Dist. LEXIS 4956, No. 88-2926 (D.N.J. Apr.

4    15, 1991).  In fact, one of the cases, Decibus, actually says that

5    "clerical task[s] should be billed," albeit "at a lower rate than a

6    paralegal task."  1991 U.S. Dist. LEXIS 4956, at *8 (emphasis added).

7    Furthermore, the Court finds Defendant's Opposition to be blatantly

8    disingenuous, as shown by a comparison of Defendant's assertion with

9    nearly identical Supreme Court language: according to Defendant,

10   "[p]urely clerical or secretarial tasks should not be billed,

11   regardless of who performs them"; according to the Supreme Court,

12   "purely clerical or secretarial tasks should not be billed at a

13   paralegal rate, regardless of who performs them."  Jenkins, 491 U.S. at

14   488 (emphasis added).

15       The Court finds Defendant's Opposition, both in this section and

16   in others, to be riddled with legal errors and outright misstatements

17   of the law.  The Court does not believe, however, that Counsel has

18   willfully tried to mislead the Court.  Counsel has at least cited the

19   cases contrary to its position (though in a misleading manner).

20   Counsel is (hopefully) competent enough to know that if it wants to

21   pull the wool over the Court's eyes, it should not cite to cases that

22   directly refute its own assertions.

23       Moving on to Plaintiffs' legal merits, given that the Court must

24   examine "the practice in the relevant market," see Jenkins, 491 U.S. at

25   288, the Court must look to Plaintiff's evidence regarding the market

26   rates for paralegal time.  This evidence establishes that a $95 hourly

27   rate for paralegals is reasonable.  (See Nicodemo Decl., ¶ 5.)

28

Plaintiffs further establish that this paralegal time was spent engaged in tasks appropriate for paralegals, and Defendant fails to identify for the Court the specific hours spent on clerical tasks.[4] (See Reply, at 7-8.)  In the Court's independent review of Plaintiffs' time records, the vast majority of items billed by paralegals appear to be tasks appropriate for paralegals and not merely secretarial or clerical work.  (See Declaration of Marija Kristich Decker in Support of Motion for Attorneys' Fees ["Decker Decl."], ¶ 2; Pls.' Exh. A: 26-30.) Defendant thus fails to rebut Plaintiffs' showing that Plaintiffs' paralegal rates are factually and legally reasonable.  The Court accordingly finds that Plaintiffs' $95 paralegal rate is reasonable.

### b.   Reasonable Hours

In determining the reasonable number of hours billed, the Court has discretion to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  See Hensley, 461 U.S. at 434.

It is appropriate for parties seeking attorneys' fees to provide evidence that they have exercised proper "billing judgment."  It is preferred, though in no way required, that counsel provides "[c]ontemporaneously recorded time sheets," see Webb v. Bd. of Educ., 471 U.S. 234, 238 n.6 (1985), so that the Court can see the extent to

---

[4] Defendant argues that certain tasks as being clerical in nature, such as scanning documents, sorting documents, assembling notices, creating lists, and coordinating witnesses. (Def.'s Opp. at 8.) However, Defendant fails to identify how many of Plaintiffs' hours were spent on such tasks.  The Court refuses to examine the time records in a line-by-line fashion.  Further, in the context of the time records as a whole, these purportedly clerical tasks appear to be intertwined with tasks that are appropriate for paralegals.  To the extent that Plaintiffs' paralegals perform incidental clerical or quasi-clerical tasks, the Court believes that the reasonable paralegal rate of $95 reflects the fact that paralegals engage in a wide range of tasks, including occasional clerical tasks.

which counsel has excised unnecessary expenditures of time in its final request for fees.  See generally Martin A. Schwartz & John E. Kirklin, 2 Section 1983 Litigation: Statutory Attorney's Fees 219-33 (3d ed. 1997 & 2009 supp.).

Here, Plaintiffs have provided detailed contemporary time records containing specific descriptions of the attorneys' various tasks during litigation.  (See Decker Decl., ¶ 2; Pl.'s Exh. A.)  These records establish that Plaintiffs attorneys' and paralegals have billed 1,034.10 hours working on the case.  (Decker Decl., ¶ 3.)  Furthermore, Plaintiffs' counsel has not billed for work performed in July and August 2009, because of counsel's interest in protecting its "long term relationship with the client," as well as "the likelihood that the full amount of attorneys' fees would never be collected from the defendant" in this case.  (Id. at ¶ 3.)

The Court finds that Plaintiffs have sufficiently established that its hours were reasonable.  Further, Plaintiffs have established that it has not attempted to recover for hours that it would not otherwise be willing to bill its client.  In rebuttal, Defendant identifies only one of Plaintiffs' specific tasks as not being reasonably undertaken: the 16.2 hours spent by attorney litigating an unrelated temporary restraining order in another court.  Plaintiffs do not dispute this, and the Court accordingly will deduct those 16.2 hours from the lodestar calculation.  (Since this particular attorney bills at a $250 rate, the total reduction is $4,050.)  Other than that, though, Defendant proffers merely conclusory arguments to the effect that Plaintiffs spent an unreasonable number of hours on the case. (Opp. at

7-8.)[5]   Because Defendant fails to identify a single task that was unreasonable, the Court finds that Plaintiffs reasonably billed 1,034.10 hours in this case, minus the 16.2 hours spent on an unrelated matter.

Further, the Court finds that Plaintiffs' $17,228.43 in research, copying, and printing fees are reasonably included in the attorneys' fee rate.   Such costs are recoverable at a reasonable rate as part of a recovery of attorneys' fees.   See, e.g., Trustees of the Construction Industry v. Redland Ins. Co., 460 F.3d 1253, 1259 (9th Cir. 2006). Plaintiffs providing records documenting the nature and extent of these costs.   (See Pls.' Exh. B.)   Plaintiffs also establish that in the relevant legal community such costs are ordinarily billed to clients separately from attorneys' fees.   (Decker Decl., ¶ 4.)   Defendant fails to rebut this showing, other than through a conclusory assertion that such costs are unreasonable.   (See Opp. at 9.)   Absent an affirmative showing from Defendant as to what costs would be reasonable, the Court finds Plaintiffs' costs reasonable.

---

[5] Defendant also argues that some matters could have been performed by fewer than two or three attorneys, and that "the time of two or three lawyers, even if present in a courtroom or during a conference when one would do, should be discounted."  (Opp. at 8.)

It is common for parties to be represented by multiple attorneys at court hearings.  These attorneys may recover for such time spent in court, unless the opposing party makes a showing that the additional attorneys were plainly unnecessary.  Defendant has not made such a showing.

Further, attorneys are permitted to confer with co-counsel, and absent a rebuttal showing of wastefulness such time is recoverable for all counsel involved.  Such conferences by definition require the presence of multiple attorneys.  As Plaintiffs note, "[Defendant's] arguments that one attorney would do at a conference defy logic." (Reply at 8.)

### c. Lodestar Calculation

The Court has found that the $160 to $280 hourly rate for attorneys is reasonable, that the $95 hourly rate for paralegals is reasonable, that 1,017.9 hours were reasonable, and $17,228.43 in research, copying, and printing expenses were reasonable. Interestingly, Plaintiffs' counsel has in fact been paid roughly this amount by their clients (Decker Decl., ¶ 3), which suggests that these fees are indeed reasonable in a competitive marketplace for legal services.

Accordingly, the lodestar calculation is $195,145.43.

### d. Adjustment to Lodestar

Even though the "reasonable" lodestar fee is presumed to be the proper fee, the Court retains discretion to adjust this number on account various considerations.  See Hensley, 461 U.S. at 434-37.

The factors used to determine adjustments to the lodestar are listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).  The factors include:

1) the time and labor required, 2) the novelty and difficulty of the questions involved, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the "undesirability" of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases.

_United Steelworkers of America v. Phelps Dodge Corp._, 896 F.2d 403, 406 n. 3 (9th Cir. 1990).[6]

Plaintiffs achieved excellent results in this case: a total award of $411,161.89 (after including the statutorily required prejudgment interest payments and additional payment of an equal amount). Defendant asserts that Plaintiffs originally claimed $562,895.61 (not including the double interest payments), and Plaintiffs' failure to recover the full amount justifies a downward departure in proportion to Plaintiffs' partial recovery.

The Court agrees with Plaintiffs that attorneys' fees must be _reasonable_, not _proportional_. (_See_ Reply at 3-4.) As the lodestar calculation shows, the requested fees are based on a reasonable hourly rate and a reasonable amount of time. Furthermore, the courts have clearly _rejected_ the use of a "proportionality rule" for calculating attorneys' fees under § 1132(g)(2)(D). _See United Automobile Workers Local 259 v. Metro Auto Center_, 501 F.3d 283, 293 (3d Cir. 2007).

Plaintiffs further establish that Defendant's intransigence necessitated Plaintiffs' counsel's extensive efforts on this case, thus justifying a recovery of the amount of fees requested without any adjustment. (_See_ Decker Decl., ¶ 4.) Defendant does not rebut this, but merely argues repeatedly that "fundamental fairness and due process" justify a downward reduction. (_See generally_ Def.'s Opp.) Defendant fails to establish that any of the _Kerr_ factors justify a downward reduction in the lodestar amount.

---

[6] The sixth and tenth factors have been expressly and implicitly rejected by later decisions. _See Cuzze v. Univ. and Community College System of Nevada_, 172 P.3d 131, 137 n. 30 (D. Nev. 2007). These factors do not factor into the Court's calculation.

Accordingly, the Court will not adjust the lodestar calculation upward or downward.  Per 29 U.S.C. § 1132(g)(2)(D), Plaintiffs are entitled to a reasonable attorneys' fees award of $195,145.43.

**D.   AUDITING FEES**

Plaintiffs also seek audit fees under 29 U.S.C. § 1132(g)(2)(E), which permits the court to award "such other legal or equitable relief as the court deems appropriate."  Plaintiffs assert that the Master Agreement, which establishes the contractual relationship between Plaintiffs and Defendant, provides that "Employers found to be delinquent [such as Defendant in this case] shall pay for all legal expenses, including attorney's fees and <u>auditing costs</u> in connection with such delinquency."  (Pl.'s Motion at 2, emphasis added.)  Plaintiffs establish that their auditor has incurred costs of $5,000.  (<u>See</u> Babel Decl. ¶ 4.)  Defendant does not challenge this calculation.

Accordingly, pursuant to 29 U.S.C. § 1132(g)(2)(E) and the tersm of the Master Agreement, the Court will award Plaintiffs $5,000 in auditing fees.

///
///
///
///
///
///
///
///
///
///

**III. CONCLUSION**

    Plaintiffs are entitled to the following:

        (1)   prejudgment interest of $68,208.92;

        (2)   additional interest payment of $68,208.92;

        (3)   attorneys' fees of $195,145.43;

        (4)   auditing fees of $5,000;

    Accordingly, the Court ORDERS that Plaintiffs are to be awarded a total of $336,563.27 in attorneys' fees, double interest, and auditing fees.  The Court ORDERS that Plaintiffs submit a revised version of the proposed final judgment that reflects the Court's present Order.

    IT IS SO ORDERED.

DATED:  October 6, 2009          _____

                              STEPHEN V. WILSON

                   UNITED STATES DISTRICT JUDGE